719 A.2d 184 (1998)
315 N.J. Super. 524
Ruby Robinson KYER, Plaintiff-Appellant,
v.
CITY OF EAST ORANGE, Cardell Cooper and J. Kenneth Garrett, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1998.
Decided October 30, 1998.
*185 Estelle Flynn Lord, Westfield, for plaintiff-appellant (Brian D. Driscoll, on the brief).
Brown & Childress, East Orange, for defendants-respondents (Louis W. Childress, Jr., on the brief).
Before Judges PRESSLER, BROCHIN and KLEINER.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The issue raised by this appeal is whether a merit system provisional employee in the municipal classified service who is denied the opportunity to become a permanent employee by reason of the municipality's negligence and her own unawareness of merit system requirements may, after seven years of exemplary service, be summarily discharged. We hold that under the circumstances of this case, the employee's job rights are a matter for determination by the Department of Personnel, which has the authority to grant a retroactive competitive examination or waiver thereof, to declare her status as a permanent and protected employee, and to fashion an appropriate remedy.
Plaintiff Ruby Robinson Kyer brought this wrongful termination action against defendants City of East Orange and J. Kenneth Garrett, its Municipal Court Director,[1] after her summary discharge on two days' notice on January 24, 1994. The matter was tried to a jury. At the close of the proofs, however, all the wrongful termination counts of the complaint were dismissed on the ground that plaintiff, because she was still a provisional employee despite the lapse of seven years from the date of her hire, had no protected job rights. The only issue that went to the jury was plaintiff's claim that her summary dismissal violated the East Orange ordinance, which requires that if the discharge is not for disciplinary reasons, permanent employees must be given forty-five days' notice and temporary employees must be given ten days' notice. Construing plaintiff's provisional status as temporary for purposes of the ordinance, the jury was asked to determine whether the discharge was for disciplinary reasons and, if not, to determine her damages as a result of defendants' failure to have given the required notice. The jury found that the discharge was not for disciplinary reasons and that plaintiff had sustained a loss of wages in the amount of $918.13 and other unspecified damages of $11,922.00. On defendants' motion, the court set aside the award of unspecified damages on the ground that there was no evidence to sustain any damage award for failure of required notice other than the pay loss.
Plaintiff appeals from the holding that she was subject to summary dismissal, claiming, as she did in the trial court, that under the facts as adduced, the City should be estopped from relying on her provisional status and denying her permanent status. She also claims that the trial judge misconstrued the East Orange ordinance and erred by not deeming her to be a permanent employee under its notice provisions. Finally, she appeals from the setting aside of the nearly $12,000 damage award.
*186 While we are reluctant in the circumstances to apply principles of estoppel against the City, we are persuaded that the facts here dictate a remedy or, at least, a remedial opportunity. We are also, however, persuaded that the affording of a remedy appropriately lies with the Department of Personnel, to which we transfer this dispute.
Our recitation of the relevant facts is based upon the proofs adduced at trial. Plaintiff was first employed by defendant City of East Orange in 1987 as a full-time municipal court mediator holding the merit system title of senior neighborhood and family counselor. Her appointment to that position was as a provisional employee in the classified service. N.J.S.A. 11A:4-13b. Although that statute prohibits the duration of provisional status for more than twelve months, plaintiff, because of defendant's negligence and inattention, remained in provisional status for the next seven years, performing her duties with distinction. Indeed, for most of that period she was the only municipal court mediator. She received mediation training from the Administrative Office of the Courts as well as other training when offered. Her success as a mediator led the City to refer municipal employees to her for dispute resolution and for referral to available services. The areas of her court mediation included family disputes, couple disputes, neighbor disputes and landlord-tenant disputes. She worked in community outreach programs and was fully familiar with available referral services. She was also responsible for preparing reports of her unit's work, including the monthly reports required by the Administrative Office of the Courts. Her job performance was described in glowing terms by the various municipal court administrators under whom she worked, the presiding judge of the municipal court, and the former municipal court directors.
According to plaintiff's testimony, when she was hired she was told that her employment was subject to a ninety-day probationary period and that if she successfully completed that period, her employment status would be permanent. She had been originally issued an employee badge, which she was required to wear at work, that listed her status as provisional. Several years later she was issued a new badge, which listed her status as a permanent employee. After the initial period of her employment, she became a member of the Public Employees' Retirement System and was accorded health insurance and life insurance benefits. She became a member of the bargaining unit, the Communication Workers of America. She had no doubt that her employment was permanent and that she was fully protected in her job, dismissable only for cause. She claims never to have been told of any competitive examination or other requirement as a condition to her permanency.
The explanation for plaintiff's seven-year provisional status lies in the City's mishandling of her initial paper work. As we have noted, East Orange is a civil service municipality whose hiring actions are subject to Department of Personnel review. N.J.A.C. 4A:4-1.10(a). The City was free, pursuant to N.J.S.A. 11A:4-13(b), to make a provisional appointment to the senior neighborhood and family counselor position upon its certification to the Department of Personnel "that... the appointee meets the minimum qualifications for the title at the time of appointment and that failure to make a provisional appointment will seriously impair the work of the appointing authority." It was also, of course, required to advise the Department of the provisional appointment and to seek the Department's approval thereof by filing the required "new-hire" forms, thereby permitting the Department to fulfill its function of notifying the appointing authority whether its action was approved or disapproved. N.J.A.C. 4A:4-1.10(b). There is no dispute that the Department never received plaintiff's initial hiring forms. While the City's Personnel Director suggested that perhaps they had been lost in the mail when sent to the Department in 1987, the fact remained that there was no copy in the City's files either, and that after plaintiff's termination and upon her inquiry of the Department, the City was requested by the Department to generate a new original hiring form for its records. It is further clear that whether or not the City had ever actually attempted to transmit plaintiff's initial hiring forms to the Department, it never received a communication *187 from the Department approving or disapproving of plaintiff's provisional employment,[2] a fact that should obviously have alerted it that plaintiff's papers had not been received by the Department. Indeed, plaintiff was entirely unknown to the Department during the entire seven years of her employment.
In August 1993, defendant J. Kenneth Garrett, who had no prior experience in municipal court management, was appointed as municipal court director. Personality conflicts apparently soon developed between Garrett and plaintiff. According to plaintiff, Garrett inquired of her almost immediately upon his appointment as to her friendship with his predecessor. He also accused her of having parties in an unused office in her unit. The fact of the matter was that court employees occasionally used the empty office to make telephone calls and to eat their lunch. Immediately upon Garrett's criticism, she posted signs to make clear that the empty office was off limits to employees for personal business. Garrett also directed plaintiff to advise him whenever she left the building on either personal or business errands, her duties frequently taking her out of her office. A conflict then developed between them regarding plaintiff's report systems with Garrett asking her for additional information and more frequent reporting. He construed as insubordination her explanations to him regarding the need to maintain the confidentiality of the mediation sessions and rejected her attempted justification for the methods and systems she used in maintaining records and submitting reports. According to the proofs, plaintiff made good faith efforts to comply with Garrett's reporting requests as she understood them but was apparently never able to satisfy him. Finally, learning that plaintiff was a provisional employee with no permanent job rights, Garrett summarily dismissed her on two days' notice on January 24, 1994. This action ensued.
We consider the issues here involved in the light of the public policy underlying the Civil Service Act, N.J.S.A. 11A:1-1 to 12-6. As stated by the Act itself, its purposes include the selection and advancement of employees on the basis of their merit, the encouragement of meritorious performance by employees in the public service and the retention and separation of employees on the basis of their performance. N.J.S.A. 11A:1-2a and -2c. As the Supreme Court noted in O'Malley v. Department of Energy, 109 N.J. 309, 313, 537 A.2d 647 (1987), respecting the predecessor act, "[t]he policy underlying the merit and fitness requirement is the provision of efficient public service in state, county and municipal government ... free from political control and personal favoritism." See also State v. Clark, 15 N.J. 334, 341, 104 A.2d 685 (1954) ("... the purpose of the Civil Service Law is to procure efficient public service and to secure tenure during good behavior for public officers...."); Jones v. Dept. of Civil Service, 118 N.J.Super. 323, 326, 287 A.2d 463 (App.Div.1972) ("[t]he underlying philosophy of the Civil Service Act, N.J.S.A. 11A:1-1, et seq., is to advance the welfare of the public and to protect permanent employees in the classified service by preventing their removal except for cause after due notice and hearing").
We think it plain that plaintiff's summary dismissal after seven years of effective and unblemished employment contravenes the underlying policy of the Civil Service Act of protecting the job rights of public employees from political and arbitrary infringement. We also recognize, however, that those job rights are reserved for permanent employees and are not accorded to provisional employees such as plaintiff. The real question then is whether a municipality can be permitted, whether by design or negligence, to effectively abrogate the Civil Service Act by retaining an employee in provisional status long after the twelve-month maximum period prescribed by N.J.S.A. 11A:4-13b.
That issue has been heretofore considered by the Supreme Court in O'Malley, supra, although in a substantially different context and on the basis of significantly disparate *188 facts. There, plaintiff O'Malley had a permanent appointment as of 1978 as a senior engineer in the then State Department of Energy. In 1979, he accepted a provisional appointment as an administrator in that Department, and in 1981 he accepted another provisional appointment as a supervising energy specialist. In 1984, he was returned to his original permanent position as senior engineer. He appealed to the then Civil Service Commission, replaced in 1986 by Title 11A with the Department of Personnel. He claimed that he was denied permanent appointment to both of his provisional positions by reason of the Civil Service Commission's failure to comply with its statutory duty to schedule a competitive examination within the then four-month maximum period allowed by prior Title 11 for provisional employment. In rejecting plaintiff's argument and reversing this court's decision, which had applied principles of estoppel against the Civil Service Commission, the Supreme Court considered the practical difficulties faced by the Commission in attempting to schedule timely competitive examinations. By the effective date of the adoption of Title 11A in 1986, these difficulties had resulted in the employment of approximately 4,500 provisional employees in state service who had served for more than four months and many others in local service. The Commission was well aware of the problem and had sought an extension of the four-month period in the new legislation to twelve months in order to deal with it. N.J.S.A. 11A:4-13b had been accordingly adopted, the Supreme Court further noting that while the O'Malley appeal was pending, there had been a substantial reduction in the number of provisional employees.
In this posture, the Supreme Court concluded that a provisional employee, apparently not fully qualified for a permanent position by reason of not having taken a competitive examination and not having been placed on an eligible list, should not achieve permanency simply because of the Civil Service Commission's logistical inability to offer a timely examination. 109 N.J. at 316, 537 A.2d 647. And, in this posture, the Court further concluded that estoppel, rarely invoked against a governmental entity, could not be fairly invoked for the purpose of affording O'Malley permanency in a provisional position. The Court thus disapproved this court's contrary dicta in Omrod v. New Jersey Dep't of Civil Serv., 151 N.J.Super. 54, 59, 376 A.2d 554 (App.Div.), certif. denied, 75 N.J. 534, 384 A.2d 513 (1977), and held that application of estoppel would frustrate the paramount legislative goal of appointments based on merit and fitness. 109 N.J. at 316-317, 537 A.2d 647. The Court explained its conclusion by noting that "[i]n the absence of an express legislative direction, we are reluctant to permit employees to retain by estoppel their provisional appointments. To permit a provisional employee to retain such an appointment pending an examination would subject governmental employment to the subterfuge and circumventions that the civil service system was designed to prevent." 109 N.J. at 318, 537 A.2d 647.
Of course, what happened here is very different. Plaintiff's extended provisional appointment was not the result of Civil Service's own and well-appreciated logistical difficulties. It was the result of the municipality's failure to comply with its statutory and regulatory obligation to notify the Department of Personnel of plaintiff's provisional appointment so that the Department could then take the appropriate steps to schedule and offer an examination and prepare an eligible list. It may well be that in the O'Malley situation, permitting a provisional employee to obtain permanency by estoppel would subject government employment to opportunities for subterfuge and circumvention. But there is another side to that coin, namely, that permitting a municipality to withhold permanent status from an apparently qualified provisional employee by failing to transmit the proper notices to Civil Service, and thereby preventing it from doing its job, also subjects government employment to opportunities for subterfuge and circumvention.
It is our view that a delicate balance must be struck between the public and private interests that are subject to prejudice when a governmental entity fails to comply with its statutory obligations. Estoppel is not the answer. First, the Supreme Court has precluded *189 that solution. Second, unqualified persons may thereby be afforded an improper route to permanency. But by the same token, it is no solution to leave remediless the well-qualified, experienced, high-performing, long-term provisional employee who is unaware that her position is not permanent, who in all likelihood would have easily achieved permanency but for the municipal negligence, and whose summary discharge from employment is as obviously unfair and arbitrary as this jury found plaintiff's to be.
We are convinced that there is a solution that accommodates all of the competing interests and that that solution lies with the Department of Personnel. It is the Department that, in the first instance, is charged with the implementation of the Civil Service Act and the carrying out of its public policy. We are satisfied that its broad powers to effectuate the legislative purpose enables it to protect the Civil Service System by protecting employees such as plaintiff from falling through the cracks. Thus, we are of the view that the Department of Personnel should now do what it would have done had it received the required timely notice from East Orange of plaintiff's provisional appointment, namely, determine her qualifications. That is to say, had an examination been held at any time during plaintiff's employment and had she been placed on the eligible list, it may be assumed that she would have been granted permanency in her position. The Department of Personnel should now afford her the examination opportunity under that same assumption or may choose, under the extraordinary circumstances here, to examine her qualifications and experience and waive the examination. Compare N.J.A.C. 4A:4-2.7, implementing N.J.S.A. 11A:4-2, permitting the waiver of a promotional examination. And if she qualifies in such manner as the Department prescribes, the Department can then fashion an appropriate remedy.
In sum, plaintiff was badly used by East Orange, which she served well and faithfully for seven years. She had a right to rely on its probity and compliance with its civil service obligations. After all, government is required to "turn square corners" in dealing with its citizens, F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985), and persons employed by civil service municipalities ought not to have to retain counsel for advice as to their job rights. By the same token, the public has the right to be assured that public employees who are granted tenure in office have met the prescribed qualifications and are appointed based on their merit. It is within the jurisdiction of the Department of Personnel, by resort to its express and implied powers, to ensure that neither of these fundamental underlying policies of the Civil Service Act is sacrificed or undermined by municipal neglect.
We therefore hold that where, as here, a long-term provisional employee has performed satisfactorily and has failed to achieve permanent status because of the appointing authority's neglect, the Department of Personnel has the authority to retroactively, as it were, determine the employee's qualifications by such methods as it shall in its discretion deem appropriate and to further determine whether, had the inquiry into qualifications been timely made, the employee would have achieved permanency in the normal course of municipal management of its affairs. In making these determinations, the Department shall afford the parties such procedural due process as it shall deem required under the circumstances and shall fashion such remedy as it deems appropriate.[3]
[2] With respect to plaintiff's remaining contentions on appeal, we affirm, substantially for the reasons stated by the trial *190 judge, his ruling that provisional employees are temporary employees for purposes of the notice requirement of the East Orange ordinance. We also affirm the order vacating the "extra" damage award for the reasons stated by the court.
The judgment of the trial court is affirmed, and we transfer the matter to the Department of Personnel for further proceedings consistent herewith.
NOTES
[1] The action against Cardell Cooper, East Orange's mayor at the time of plaintiff's termination, was dismissed during trial, and we do not understand plaintiff to be pressing her appeal against him.
[2] We note that N.J.A.C. 4A:4-1.5b provides that the Department must notify the appointing authority when a provisional employee has failed to take an examination within the allotted time and must direct the appointing authority to separate the employee from service within thirty days thereafter unless an extension is sought for and granted.
[3] We note that the doctrine of collateral estoppel clearly applies to the jury's determination that plaintiff was not discharged for cause. See Matter of Tanelli, 194 N.J.Super. 492, 498, 477 A.2d 394 (App.Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984), applying the doctrine in administrative proceedings to facts determined in earlier civil litigation. Compare Wunschel v. City of Jersey City, 96 N.J. 651, 658, 477 A.2d 329 (1984), declining to apply the doctrine where the party against whom it was sought to be invoked was not a party or privy to the prior proceedings. Here, of course, the parties, plaintiff and the City, are identical in both the civil and administrative proceedings.