748 A.2d 598 (2000)
329 N.J. Super. 488
In the Matter of Joseph DONOHUE, Jeffrey N. Conford, Rene Weidenfeld.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 2000.
Decided April 4, 2000.
*599 Steven P. Weissman, Somerset, for appellants (Weissman & Mintz, attorneys; Colin M. Page, on the brief).
Andrea R. Grundfest, Deputy Attorney General, for respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Grundfest, on the brief).
Before Judges BAIME and BROCHIN.
The opinion of the court was delivered by BAIME, P.J.A.D.
This appeal is from a decision of the Commissioner of Personnel sustaining the termination of appellants' employment as rate analysts with the Department of Environmental Protection (DEP). Appellants contend that the Commissioner erroneously denied their application to expand the layoff unit to include the Board of Public Utilities (BPU) and to allow them to exercise their lateral and demotional rights with respect to rate analyst positions in that agency. We remand the matter to the Commissioner for reconsideration of her decision.

*600 I.
Prior to August 1991, appellants were employed by the BPU as rate analysts. In that year, the BPU was merged into the DEP pursuant to a governmental reorganization plan. Appellants were informed that they retained accumulated seniority, sick leave and vacation entitlements as well as their layoff or demotional rights See N.J.A.C. 4A:4-7.4 (transferred employees retain their demotional rights and sick leave, vacation and accumulated seniority).
In July 1994, the BPU returned to its former status as an autonomous agency pursuant to another governmental reorganization. However, the DEP retained a small number of rate analysts to serve in its Division of Solid and Hazardous Waste. The only DEP employees who held the rate analyst position were those who previously worked for the BPU. Most of the rate analysts returned to the BPU. Appellants were among the few who were retained by the DEP.
Although the work performed by the DEP's rate analysts was essentially the same as that performed by the BPU's rate analysts, the DEP's retention of appellants was to have a profound effect upon their careers. In July 1994, the DEP laid off employees who held a job title directly below that of appellants. Under Civil Service regulations, workers who are separated from service in a reduction in force have demotional rights to lower job titles and thus may "bump" or displace persons holding such positions. They also have lateral rights and may "bump" or displace workers having less seniority within the same job title. Following the reduction in force by the DEP, appellants could not exercise their demotional rights in that agency because the job titles directly below their position had been eliminated. After the DEP's 1994 layoffs, the only state employees who held the title rate analyst were those who worked for the BPU. Appellants could not exercise their demotional rights and "bump" BPU rate analysts because N.J.A.C. 4A:8-1.5(a) limits a layoff unit to the worker's department or autonomous agency. State employees may not exercise demotional or lateral rights to positions in other agencies even when the job titles are identical and the work performed is the same. Ibid.
With the looming prospect of additional layoffs, appellants petitioned the Merit System Board on March 20, 1995. They sought a more flexible interpretation of the applicable layoff unit. In its response, which was published in the New Jersey Register, the Board replied that "the layoff unit in State service should remain the department or autonomous agency" in which the worker is employed, but that a petition to relax the rule may be submitted if N.J.A.C. 4A:8-1.5(a) "causes a problem in a particular situation."
On September 15, 1995, appellants filed a petition with the Commissioner seeking relaxation of N.J.A.C. 4A:8-1.5(a). Noting the peculiar circumstances in which they were "stranded" in the DEP by reason of the second governmental reorganization, appellants asked the Commissioner to "approve a layoff unit consisting of more than one department." Specifically, they requested that the layoff unit be expanded to include the BPU. Alternatively, appellants suggested that the "appointing authority[ ]" reassign or transfer them to other positions in the DEP "to lessen the possibility ... of future layoffs."
The Commissioner responded on November 27, 1995. While recognizing her power to relax a rule for good cause, the Commissioner declined appellants' request to expand the layoff unit to include the BPU. The only reason given for the Commissioner's denial of appellants' application was that the BPU appointing authority and BPU employees "who could be adversely affected would not support" the proposed action. As to appellants' alternative request for a reassignment, the Commissioner observed that their "legitimate concerns" could be addressed "through mechanisms such as reclassification *601 to an alternate job title." The Commissioner thus ordered the Director of the Division of Personnel Management to "conduct a classification review of [r]ate [a]nalyst titles."
On November 29, 1995, appellants were directed to complete a "Job Analysis Questionnaire." Appellants expeditiously complied. The matter remained dormant, however, causing appellants to inquire into the status of the classification review in February 1996. In response, appellants were advised that Arthur Brown, the Director, was in the process of "reviewing the results of [the] analysis and [was] considering the options available."
On May 15, 1996, the Director denied appellants' request for reclassification. While observing "some degree of similarity between the job duties being performed [by appellants] and the job duties of other titles within the DEP," the Director concluded that "[t]he existing rate analysts [positions] remain the most appropriate classification for the work being performed."
On May 30, 1996, appellants requested reconsideration of the Director's decision. We need not describe that request in detail. Suffice it to say, appellants alluded to the Commissioner's characterization of their arguments as presenting "legitimate concerns," and threatened to appeal "the discriminatory and inequitable manner in which [their] request for reclassification or reassignment ha[d] been handled."
The record does not indicate whether the Director responded to appellants' request for reconsideration. We do know, however, that appellants' woes quickly escalated. On June 20, 1996, they received layoff notices informing them that "in the absence of any lateral or demotional options, they would be [separated] from service." In their subsequent appeals, appellants sought to resurrect their claim that N.J.A.C. 4A:8-1.5(a) should be relaxed and that they should be permitted to exercise their "bumping rights" against those holding their job titles in the BPU. Appellants were unsuccessful. The Commissioner ultimately concluded that appellants' request to expand the layoff unit was not a cognizable argument in an appeal from a final decision terminating their employment.

II.
Appellants' sole argument is that the Commissioner erred by refusing to relax N.J.A.C. 4A:8-1.5(a). Before we address that question, we consider the Commissioner's argument that this appeal is untimely. The Commissioner contends that appellants failed to file an appeal to this court from her decision rendered on November 27, 1995, denying appellants' petition for relaxation of the regulation and holding that their demotional and lateral rights could only be exercised within the DEP. According to the Commissioner, appellants waived their right to challenge that decision.
We reject the Commissioner's procedural argument. Our reasons are several. First, we regard the Commissioner's decision of November 27, 1995 as interlocutory. It will be recalled that appellants in their September 15, 1995 submission requested relaxation of N.J.A.C. 4A:8-1.5(a) or reassignment by the appointing authority. Although the Commissioner's decision denied appellants' petition for expansion of the layoff unit, the question of reassignment remained open. Indeed, the Commissioner ordered the Director of Personnel Management to conduct a classification inquiry. Appellants dutifully complied with all of the Director's requests and sought expeditious disposition of the study because of the desultory pace of the process. Had appellants attempted to file a direct appeal from the Commissioner's decision of November 27, 1995, we would have dismissed it because it was not final. To be appealable without leave granted, the judgement or administrative determination must be final as to all parties and all issues. See Stigliano v. St. Rose High School, 198 N.J.Super. 520, 523 n.1, 487 *602 A.2d 1260 (App.Div.1984); see also Hudson v. Hudson, 36 N.J. 549, 552-53, 178 A.2d 202 (1962); Nicholas v. Sugar Lo Co., 192 N.J.Super. 444, 450, 471 A.2d 44 (App. Div.1983), certif. denied, 96 N.J. 284, 475 A.2d 582 (1984). The Commissioner's decision was not final because it left unadjudicated appellant's request for reclassification.
Second, even if we were to regard the Commissioner's November 27, 1995 decision as final, an appeal at that point would have been deemed procedurally defective. We would have required appellants to exhaust their administrative remedies by acceding to the Commissioner's direction that a classification review be conducted. We would not have given appellants a "green light to bypass the primary jurisdiction of the agency." Boss v. Rockland Elec. Co., 95 N.J. 33, 42, 468 A.2d 1055 (1983); see also Boldt v. Correspondence Management, Inc., 320 N.J.Super. 74, 82-83, 726 A.2d 975 (App.Div. 1999); Ferraro v. City of Long Branch, 314 N.J.Super. 268, 287, 714 A.2d 945 (App.Div.), certif. denied, 157 N.J. 541, 724 A.2d 801 (1998). Our respect for the agency and our sensitivity to its expertise would have required us to await disposition of the classification study before considering issues relating to relaxation of the regulation. Had an appeal been filed, it would either have been dismissed without prejudice or stayed pending completion of the classification review.
We recognize that the Director's decision of May 15, 1996 denied appellants' remaining request for relief. We acknowledge that appellants did not appeal the Director's determination to the Commissioner. The regulations dealing with such appeals can fairly be characterized as arcane. An appeal to the Commissioner from a determination as to layoff rights must be filed within twenty days. N.J.A.C. 4A:8-2.6. An appeal to the Commissioner from a classification decision must also be filed within twenty days. N.J.A.C. 4A:3-3.9.
In any event, appellants sought reconsideration of the Director's decision. N.J.A.C. 4A:2-1.6 permits a party to petition the "Commissioner or Board" for reconsideration. We cannot determine whether this regulation authorizes petitions for reconsideration to the Director of Personnel Management. We assume that it does. But even if it does not, the simple and overriding fact is that appellants did not sit idly by following the Director's decision. At all times, they vigorously sought to pursue their remedies.
Beyond this, the chronology of events suggests that appellants could not have perfected an appeal to the Director before they received their layoff notices. Upon being apprised of their termination from employment, appellants understandably focused their efforts upon challenging their separation from service. They cannot be faulted for merging their challenge to the Commissioner's refusal to expand the layoff unit with their attack upon their termination decisions.
In these circumstances, the interests of justice plainly militate in favor of considering appellants' argument on its merits.

III.
At the outset, we note our limited role in reviewing the actions of administrative agencies. The judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its actions; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. In re Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996) (citing Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963)).
*603 This is one of those "rare" cases in which judicial intervention is warranted. Ibid. Permanent civil service employees may be terminated for reasons of economy, efficiency or incompetence. N.J.S.A. 11A:8-1. A preference exists for demotion in lieu of layoff whenever possible. Ibid. Pursuant to the Civil Service Act (N.J.S.A. 11A:1-1 to :12-6), the Merit System Board is charged with the responsibility for adopting and enforcing rules regarding the order of layoff and the determination of employee rights. N.J.S.A. 11A:2-6(d); N.J.S.A. 11A:8-1. In accordance with that mandate, the Board's regulations prescribe the procedures to be followed upon a layoff. N.J.A.C. 4A:8-1.1 to -2.6. Those procedures require a prompt determination of a targeted employee's seniority, re-employment and demotional rights. N.J.A.C. 4A:8-1.1; N.J.A.C. 4A:8-2.1.
As we noted earlier, an individual facing a layoff might have a lateral or demotional right to displace other workers. A lateral right is:
the right of a permanent employee to displace the least senior employee at a selected job location in the layoff unit holding a title determined to be the same or comparable to the affected title of the employee.

[N.J.A.C. 4A:8-2.1(a) ].
A demotional title right is defined as:
the right of a permanent employee to displace the least senior employee at a selected job location in the layoff unit holding a title determined to be lower than but related to the affected title of the employee.

[N.J.A.C. 4A:8-2.1(b) ].
Employees may be displaced only within the layoff unit, which, for state employees, is defined as the department or autonomous agency in which the targeted employee works. N.J.A.C. 4A:8-1.5(a).
The exercise of lateral or demotional title rights may have a serious impact on other government workers, who may be displaced, as well as on the appointing authority, whose work force may be rearranged. Therefore, layoff rights may be exercised only within the explicitly defined limits of the layoff unit. In addition, the determination of layoff rights requires the application of uniform regulatory criteria based upon a careful analysis of job qualifications and duties articulated in the job specifications of the targeted employee, as compared to the job specifications of those titles within the layoff unit to which the targeted individual might have rights. See N.J.A.C. 4A:8-2.2.
Against this statutory and regulatory backdrop, the principal issue before the Commissioner on November 27, 1995 was whether N.J.A.C. 4A:8-1.5(a), which defines the layoff unit as the employee's department or autonomous agency, should be relaxed. N.J.A.C. 4A:8-1.5(a)(1) permits a department or agency to submit to the Commissioner "a request for a different layoff unit." The request must include information such as "[t]he functional and organizational structure of the department or agency, [t]he number of employees and the funding source, bargaining unit, equal employment opportunity categories, job titles, class codes and salary ranges of employees in the proposed layoff unit, [t]he effect upon employee layoff rights of the proposed layoff unit, including reasonable geographic considerations relating to the employees' job location, [t]he impact upon service to department clientele and the public, and [o]ther factors that may be relevant." N.J.A.C. 4A:8-1.5(a)(1)(ii), (iii), (iv), (v) and (vi). The department must also provide notice of the request to affected negotiations representatives, N.J.A.C. 4A:8-1.5(a)(2), who are then entitled to submit written comments and recommendations. N.J.A.C. 4A:8-1.5(a)(3). The Commissioner's determination is to be based "on the totality of the information submitted" as well as the comments and recommendations received. N.J.A.C. 4A:8-1.5(a)(4).
The request to expand the layoff unit in this case was not made by an administrative *604 department or agency. The elaborate procedures we have described were thus not explicitly applicable. We think it reasonable to expect that a request to change the layoff unit made by an administrative department or agency would perhaps be treated more seriously by the Commissioner than a mere request by individual workers to relax N.J.A.C. 4A:8-1.5(a). This much conceded, we think it equally reasonable to expect that the Commissioner would consider many of the same factors and circumstances set forth in N.J.A.C. 4A:8-1.5(a)(1)(ii), (iii), (iv), (v) and (vi) in deciding whether or not to grant appellants' petition to expand the layoff unit.
Instead, the Commissioner only considered the fact that the BPU appointing authority and BPU employees "who could be adversely affected [by appellants' request] would not support" the proposed action. Undoubtedly, the impact of appellants' request on the layoff rights of the proposed layoff unit was a legitimate factor for the Commissioner to consider. But we are satisfied that other factors should also have been considered, including the rather unique circumstances in which appellants were "stranded" in the DEP following the second governmental reorganization and the extent to which expansion of the layoff unit would disrupt or advance the BPU's business. The Commissioner's decision was thus inconsistent with the powers granted to her by the applicable regulations.
We do not know what evidence the Commissioner considered in rendering her decision on November 27, 1995. On remand, the parties and others who may be affected should be afforded an opportunity to present all information they deem relevant on the issue. The Commissioner should make specific findings of fact and articulate her conclusion with sufficient particularity to enable interested parties, and possibly a reviewing court, to discern the basis for her decision. We do not retain jurisdiction. Nor do we direct that appellants be re-employed in their former positions pending disposition of the question at hand. However, we direct that the remanded proceedings be completed expeditiously.
The matter is remanded to the Commissioner for further proceedings consistent with this opinion.