786 A.2d 133 (2001)
345 N.J. Super. 579
Dina MELANI, Plaintiff-Respondent,
v.
COUNTY OF PASSAIC, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 2001.
Decided December 14, 2001.
*134 Elisa Leib argued the cause for appellant (Harold Leib & Associates, attorneys; Ms. Leib, on the brief).
James V. Segreto argued the cause for respondent (Segreto, Bruins & Segreto, attorneys; Mr. Segreto, of counsel and on the brief).
Before Judges CIANCIA, LESEMANN, and PARRILLO.
The opinion of the court was delivered by PARRILLO, J.A.D.
Defendant County of Passaic (County) appeals an order of the Law Division reinstating, with back pay, plaintiff Dina Melani to her former position as the County's Director of Information and Referral in its Department of Aging. Plaintiff had worked for the County for seven years, but had never taken a civil service examination, so the County treated her as a provisional employee and not a permanent employee in its 1998 layoff plan. On appeal, the County argues that the trial court should have granted its motion to transfer the matter to the Department of Personnel (DOP). We agree that plaintiff's job *135 rights are a matter for determination by the DOP. We therefore vacate the judgment entered below and transfer the matter to the DOP, which has the authority to grant a retroactive competitive examination or waiver thereof, to declare her status as a permanent and protected employee, and to fashion an appropriate remedy.
Plaintiff brought this wrongful discharge action against defendant after her termination on May 1, 1998, alleging, in part, that the County should be equitably estopped from treating her as a provisional rather than a permanent employee due to its failure to call for a civil service examination during her seven-year tenure. The matter was tried without a jury after defendant's multiple motions to transfer the action to the DOP were denied. At the close of the proofs, the trial court found that "actual budgetary considerations did not underlay [plaintiff's] job termination." Accordingly, the court ordered that plaintiff be immediately restored to her former position "or to a comparable administrative position at the same salary she earned at the time of her termination," where she could remain "until a competitive examination for the position of Director of Information in the Office of Aging has been called and a certified list has been issued by the Department of Personnel and a person has been appointed from that list." Plaintiff would also receive back pay and re-enrollment in the pension system retroactive to the date of her termination. This order was stayed pending appeal.
Defendant appeals from the order of reinstatement, claiming that the determination of plaintiff's job rights lies within the primary jurisdiction of the DOP to which the matter should have been transferred and that, in any event, the trial court erred by allowing a provisional employee to retain her position merely because she was not offered a civil service examination. Defendant also claims that the trial judge erroneously shifted the burden to the County to prove the good faith basis of the layoff instead of placing it on plaintiff to show a reason for her termination other than economy and efficiency.
As in Kyer v. City of East Orange, 315 N.J.Super. 524, 527, 719 A.2d 184 (App.Div.1998), we are persuaded that the facts here dictate the need for "a remedy or, at least, a remedial opportunity ... [and] that the affording of a remedy appropriately lies within the [DOP], to which we transfer this dispute."
Our recitation of the relevant facts is based upon the proofs adduced at trial. Plaintiff was first employed by defendant in August 1991 as a secretarial assistant. Her appointment to that position was as a provisional employee in the classified service, N.J.S.A. 11A:4-13(b), pending open competitive examination. Although that statute prohibits maintaining provisional status for more than twelve months, plaintiff remained in provisional status for the next seven years and never sat for a civil service examination. After her first year of employment, plaintiff was transferred to the Passaic County Area Department of Agingan agency that provided senior citizens in the county with, among other things, information about, and referrals for, services, benefits, and entitlements. On July 1, 1992, plaintiff was appointed as the agency's Director of Information and Referral.
The County is a civil service political subdivision whose hiring actions are subject to DOP review. N.J.A.C. 4A:4-1.10(a). The County was free, pursuant to N.J.S.A. 11A:4-13(b), to make a provisional appointment to the position in which it placed plaintiff upon its certification to the DOP "that ... the appointee meets the minimum qualifications for the title at the time of appointment and that failure to *136 make a provisional appointment will seriously impair the work of the appointing authority." It was also, of course, required to advise the DOP of the provisional appointment and to seek the DOP's approval thereof by filing the required "new-hire" forms, thereby permitting the DOP to fulfill its function of notifying the appointing authority whether its action was approved or disapproved. N.J.A.C. 4A:4-1.10(b). The filing of the "new-hire" forms also started the process for creating new job titles and arranging competitive examinations.
No proof was adduced that the DOP ever received either plaintiff's initial hiring forms or transfer forms effecting her change in title from secretarial assistant to unit director. It is also undisputed that the County had never received a communication from the DOP approving or disapproving of plaintiff's provisional employment or her transfer in July 1992 to the Department of Aging, a fact that should obviously have alerted it that plaintiff's papers had not been received by the DOP. Indeed, plaintiff never received notice from the DOP that a civil service examination would be scheduled for her job title.
In 1996, the County's governing body proposed a zero-growth budget that necessitated staff reductions to be implemented on March 1, 1997. On February 24, 1997, the County notified the DOP of thirty-three planned layoffs for 1997. This plan required the approval of the DOP, which would review and consider alternatives to layoffs and determine employees' seniority and displacement rights. The DOP approved the 1997 layoff plan that resulted in job terminations for, among others, four permanent employees.
Further layoffs were planned for 1998 including provisional employees to be laid off on May 1, 1998 and permanent employees on June 15, 1998. On April 27, 1998, the DOP approved the County's layoff plan that affected forty-four employees from fourteen departments of county government, including permanent employees and three employees in the Department of Aging, including plaintiff. Plaintiff was notified on April 15, 1998 of her termination effective May 1, 1998.
Thereafter, in April 1999, defendant approved the merger of the Department of Aging into the County's Human Services Department. Under the consolidation, the former agency's information and referral services work was incorporated into the existing Human Services information and referral services office, which served disabled and homeless individuals. There was an information and referral services supervisor for the whole office; no supervisor exclusively oversaw services provided for senior citizens. Federal grant monies that helped fund the Department of Aging's information and assistance functions were continued in 1999 and 2000, with the County and State providing "matching" funds of at least twenty-five percent of the total federal monies provided. In fact, the County generally funded about fifty percent of the costs of providing senior citizens' services.
Prior to the merger, the Human Services Department employed four persons, covering the equivalent of two full-time positions, to work on information and referral services for clients other than senior citizens. Together with the four persons in the Department of Aging who handled information and referral services for senior citizens, eight people in total performed these separate functions for the County prior to the merger, compared with five employees performing the combined functions in 2000.
At the conclusion of the proofs, the trial judge found that "no attempt was made by the employer to confirm that the State had *137 received notification of the employee's status, even after six years of employment" and accordingly concluded that plaintiff:
has proven by a preponderance of the evidence that the defendant has not complied with the provisions of [N.J.S.A.] 11:4 et seq. by failing to notify the State of the plaintiff's provisional status and consequently depriving her of the opportunity to take a competitive examination, possibly leading her to acquiring permanent status.
The trial judge went on to find that the budgetary reasons for discharge were pretextual, concluding that "no cost savings were effectuated by the elimination of the plaintiff's position," and that "the money to fund the program remained available at the time of the decision to terminate the plaintiff, as well as thereafter." Accordingly, the court ordered the County to reinstate plaintiff, with back pay, to the same position she held or a similar position at the same salary, and to so notify the DOP. Plaintiff was entitled to remain in that position until the appropriate competitive examination could be offered and an appointment made from the certified list that would follow.
We consider the issues here involved, most notably that of primary jurisdiction, in light of this background and the public policies underlying the Civil Service Act (Act), N.J.S.A. 11A:1-1 to 12-6. The Act implements the constitutional mandate that "[a]ppointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive;...." N.J. Const. art. VII, § 1, ¶ 2.
Within the civil service system's competitive division of career service positions, "regular appointments" are not permanent until completion of an examination, certification, and working test period. N.J.S.A. 11A:3-2; N.J.S.A. 11A:4-13(a). "Provisional appointments" are made within the competitive division
only in the absence of a complete certification, if the appointing authority certifies that in each individual case the appointee meets the minimum qualifications for the title at the time of appointment and that failure to make a provisional appointment will seriously impair the work of the appointing authority. In no case shall any provisional appointment exceed a period of 12 months;....

[N.J.S.A. 11A:4-13(b).]
A provisional appointee's position is held "`pending the appointment of a person from an eligible list.'" In re Chief Clerk, 282 N.J.Super. 530, 533-34, 660 A.2d 1217 (App.Div.) (quoting N.J.A.C. 4A:1-1.3), certif. denied, 142 N.J. 573, 667 A.2d 191 (1995). It is the responsibility of the DOP to schedule, announce, and administer civil service examinations; generate "eligible lists" from which positions are filled; and certify the three eligible persons who received the highest rankings on the list, one of whom should be chosen for the regular appointment. N.J.S.A. 11A:4-1, -4, and -8; Communications Workers of Am. v. New Jersey Dep't of Personnel, 154 N.J. 121, 124, 711 A.2d 890 (1998).
A provisional appointee "does not enjoy the job protection accorded to a permanent employee." In re Chief Clerk, supra, 282 N.J.Super. at 533, 660 A.2d 1217. Ordinarily, permanent employees can be discharged or demoted only for cause, and they have pre-termination appeal and hearing rights; however, provisional employees can be terminated at any time at the discretion of the employer. O'Malley v. Dep't of Energy, 109 N.J. 309, *138 314, 537 A.2d 647 (1987); N.J.A.C. 4A:2-2.1,-2.2, -2.5, and -2.8.
Thus, in terms of layoffs, permanent employees who are separated from service have demotional rights to lower job titles, and thus may "bump" or displace persons holding a title determined to be lower than, but related to, the affected title of the employee. In re Donohue, 329 N.J.Super. 488, 491, 497, 748 A.2d 598 (App.Div.2000) (citing N.J.A.C. 4A:8-2.1(b)). Permanent employees also have lateral rights to "`displace the least senior employee at a selected job location in the layoff unit holding a title determined to be the same or comparable to the affected title of the employee.'" Id. at 492, 497, 748 A.2d 598 (quoting N.J.A.C. 4A:8-2.1(a)).[1]
Provisional employees, however, are not entirely without any rights. In Williams v. Civil Serv. Comm'n, 66 N.J. 152, 329 A.2d 556 (1974), a provisional employee was terminated for cause. The Court affirmed that, as a provisional employee, he was subject to termination at any time at the employer's discretion, without the right to a hearing on the alleged deprivation of his property interest in the position. However, the termination further implicated a regulation that would allow the Commission to reject any future civil service applications from the plaintiff, and to preclude him from civil service examinations and eligible lists for public employment. Id. at 156-57, 329 A.2d 556. The Court held that in view of this deprivation of the "liberty" to pursue subsequent public employment opportunities, due process required the right to a post-termination hearing. Ibid.
In In re Wiggins, 242 N.J.Super. 342, 343, 576 A.2d 932 (App.Div.1990), in addition to terminating the provisional employee, the county employer further requested that the Board remove that employee's name from the eligible list. We held that a hearing on that issue was warranted, "as a matter of fundamental fairness and administrative due process," due to the "intensely factual determination" as to whether the employee's work performance was unsatisfactory. Id. at 345-46, 576 A.2d 932 (citing Cunningham v. Dep't of Civil Serv., 69 N.J. 13, 350 A.2d 58 (1975)).
To be sure, a provisional employee is not vested with the right to retain provisional appointment or to have that status converted into a permanent one simply by virtue of the DOP's failure to give a timely examination or take other action against such an appointee. O'Malley, supra, 109 N.J. at 316, 537 A.2d 647; Capibianco v. Civil Service Comm'n, 60 N.J.Super. 307, 319, 158 A.2d 834 (App.Div.1960). This is because "[w]ith respect to provisional employees, [the legislative] goal [of appointments based on merit and fitness] is met by competitive examinations, not by holding a position beyond the time prescribed by the Legislature." O'Malley, supra, 109 N.J. at 316-17, 537 A.2d 647.
Different considerations pertain, however, where, as here, a long-term provisional employee of unblemished employment record is deprived of the opportunity to achieve permanent status not because of *139 any fault on the part of the employee or logistical inability of the DOP to offer a timely examination, but rather on account of lapses by the appointing authority. Thus, in Kyer, supra, where the plaintiff had performed seven years of exemplary service but never took an examination or otherwise obtained permanent status, we framed the issue thus:
whether a merit system provisional employee in the municipal classified service who is denied the opportunity to become a permanent employee by reason of the municipality's negligence and her own unawareness of merit system requirements may, after seven years of exemplary service, be summarily discharged.
[315 N.J.Super. at 525, 719 A.2d 184.]
We continued:
We think it plain that plaintiff's summary dismissal after seven years of effective and unblemished employment contravenes the underlying policy of the Civil Service Act of protecting the job rights of public employees from political and arbitrary infringement. We also recognize, however, that those job rights are reserved for permanent employees and are not accorded to provisional employees such as plaintiff. The real question then is whether a municipality can be permitted, whether by design or negligence, to effectively abrogate the Civil Service Act by retaining an employee in provisional status long after the twelve-month maximum period prescribed by N.J.S.A. 11A:4-13b.

[Id. at 530, 719 A.2d 184.]
We answered that question in the negative and provided the following remedial opportunity in that case:
We therefore hold that where, as here, a long-term provisional employee has performed satisfactorily and has failed to achieve permanent status because of the appointing authority's neglect, the Department of Personnel has the authority to retroactively, as it were, determine the employee's qualifications by such methods as it shall in its discretion deem appropriate and to further determine whether, had the inquiry into qualifications been timely made, the employee would have achieved permanency in the normal course of municipal management of its affairs. In making these determinations, the Department shall afford the parties such procedural due process as it shall deem required under the circumstances and shall fashion such remedy as it deems appropriate.

[Id. at 534, 719 A.2d 184.]
We are persuaded that the facts here dictate an identical remedy. Plaintiff remained in her provisional position for seven years because of defendant's apparent inattention and mishandling of her paperwork both initially and upon her transfer and promotion. Simply put, defendant failed to comply with its statutory and regulatory obligation to notify the DOP of plaintiff's existence and status. On the other hand, there is no proof to suggest plaintiff performed other than satisfactorily, or that her employment record was other than unblemished, or that she was unqualified save for her failure to take the civil service examination. As in Kyer, "permitting a [political subdivision] to withhold permanent status from an apparently qualified provisional employee by failing to transmit the proper notices to Civil Service, and thereby preventing it from doing its job, also subjects government employment to opportunities for subterfuge and circumvention." Id. at 532, 719 A.2d 184.
Having determined that plaintiff should be given a remedial opportunity, we are also persuaded that, as a matter of primary jurisdiction, the "affording of a remedy *140 [more] appropriately lies with the Department of Personnel." Id. at 527, 719 A.2d 184. Notably, both plaintiff's claim and the remedy for such a claim lie not only within the DOP's power[2] but, as recognized in Kyer, supra, within that agency's special expertise and competence. On a comparative scale, the DOP is in the better position by virtue of its statutory status, administrative competence, and regulatory expertise to adjudicate the matter of plaintiff's job rights and the remedy, if any, to which she may be entitled.[3] The DOP is, after all, entrusted with the implementation of the Civil Service Act. N.J.A.C. 4A:1-1.2(a). Under these circumstances, courts are obliged to defer to the primary jurisdiction of the executive body, referring such issues for administrative resolution. See Campione v. Adamar of N.J., 155 N.J. 245, 264, 714 A.2d 299 (1998); Bergen Pines Hosp. v. Dep't of Human Servs., 96 N.J. 456, 474, 476 A.2d 784 (1984); Boss v. Rockland Elec. Co., 95 N.J. 33, 40, 468 A.2d 1055 (1983); Hinfey v. Matawan Reg'l Bd. of Ed., 77 N.J. 514, 531-32, 391 A.2d 899 (1978); Muise v. GPU, Inc., 332 N.J.Super. 140, 160-61, 753 A.2d 116 (App.Div.2000). We are convinced that in this case it was error for the trial judge not to have followed this approach.
Of course, upon remand, even if the DOP determineseither through civil service examination or waiver thereofthat plaintiff should have held permanent status at the time of her termination, plaintiff still may have been properly subject to layoff inasmuch as both the 1997 and 1998 county layoff plans adversely affected other permanent employees as well. And there might well have been no recourse for plaintiff if her position were abolished and there were no comparable title for her to assume through exercise of lateral or demotional rights. These considerations, however, are within the special expertise of the DOP and further support our transfer of this dispute to that agency.
On this score, and as a final matter, we are constrained to note our disagreement with the trial court's finding that the budgetary reasons cited for plaintiff's termination were pretextual. Suffice it to say, our reading of the record suggests that plaintiff had not met her burden of proving that the adverse employment action was motivated by a reason other than economy, efficiency, or other related purposes. Needless to say, on remand collateral estoppel clearly would not apply to the trial judge's determination to the contrary.
*141 The DOP shall consider the matter de novo.
For these reasons, the judgment of the trial court is vacated and we transfer the matter to the DOP for further proceedings consistent therewith.
NOTES
[1] The Act also provides for appeal rights following layoffs, without expressly addressing provisional employees, stating:

A permanent employee who is laid off or demoted in lieu of layoff shall have a right to appeal the good faith of such layoff or demotion to the board. Appeals must be filed within 20 days of final notice of such layoff or demotion. The burden of proof in such actions shall be on the employee and rules adopted pursuant to N.J.S. 11A:2-22 [back pay, benefits, seniority, and attorney fees] would also be applicable to these appeals.
[N.J.S.A. 11A:8-4.]
[2] This approach would allow plaintiff to seek relief before the DOP even though she did not file her action within the twenty-day period that applies to a "permanent employee who is laid off or demoted in lieu of layoff" pursuant to N.J.S.A. 11A:8-4. As indicated, however, that provision applies only to "permanent employees," and its terms do not preclude review of claims made by provisional employees such as plaintiff, even though she seeks to obtain the legal protections available to permanent employees. Rather, N.J.A.C. 4A:2-1.1 applies, but its twenty-day time limitation for filing an appeal may be relaxed "for good cause in a particular situation, on notice to affected parties, in order to effectuate the purpose of Title 11A, New Jersey Statutes." N.J.A.C. 4A:1-1.2. See In re Allen, 262 N.J.Super. 438, 443, 621 A.2d 87 (App.Div.1993). The DOP would be well within its authority to permit consideration of the merits of plaintiff's claim beyond the twenty-day period.
[3] As we said in Kyer, supra:

The Department of Personnel should now afford her the examination opportunity under that same assumption or may choose, under the extraordinary circumstances here, to examine her qualifications and experience and waive the examination.... And if she qualifies in such manner as the Department prescribes, the Department can then fashion an appropriate remedy.
[315 N.J.Super. at 533, 719 A.2d 184.]