**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4539-16T1

CITY OF NEWARK PUBLIC
SCHOOLS,

     Plaintiff-Appellant,

v.

OPEIU LOCAL 32,

     Defendant-Respondent.

_____

Argued September 18, 2018 – Decided October 10, 2018

Before Judges Suter and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000015-17.

Andrew L. Smith argued the cause for appellant (Lite DePalma Greenberg, LLC, attorneys; Andrew L. Smith, on the briefs; Victor A. Afanador, of counsel and on the briefs).

Kevin P. McGovern argued the cause for respondent (Mets Schiro & McGovern, LLP, attorneys; Kevin P. McGovern, of counsel and on the brief).

PER CURIAM

Plaintiff City of Newark Public Schools (NPS) appeals from a May 11, 2017 order denying its motion to vacate a labor arbitration award, confirming the award as modified to reinstate grievant Alicia Brown to the title of Employee Benefits Specialist, and dismissing NPS's complaint with prejudice. For the reasons that follow, we reverse.

NPS and defendant OPIEU Local 32 (the Union) are parties to a collective bargaining agreement (CBA) covering terms and conditions of employment for all NPS employees. Brown was employed by NPS as a Technical Assistant 3 until August 14, 2015, when she was separated from that position pursuant to an amended layoff plan approved by the Civil Service Commission (Commission) on June 18, 2015. The layoff plan abolished the position of Technical Assistant 3 at NPS.

Brown was offered a provisional position as an Employee Benefits Specialist effective August 17, 2015. She accepted the position, which had a higher salary but similar job duties to the Technical Assistant 3 position. Brown was terminated from the provisional position effective August 21, 2015. The Union grieved the termination on Brown's behalf. The grievance proceeded to binding and final arbitration pursuant to Article IX of the CBA.

We recount the following relevant facts. Brown left her post and the worksite on July 31, 2015, when her computer did not allow her access to the People Soft program she used in her work. Brown was scheduled to work from 8:30 a.m. to 4:30 p.m. She left work without permission at 9:55 a.m. Brown was counseled at an August 5, 2015 meeting with her supervisor and the Director of Employee Services. She was advised she could not leave her post, provided with instructions on controlling her anxiety, and warned this was not to happen again. She was told if she could not gain computer access to the People Soft program, she was to take a break and walk around the block if necessary to calm down so that she could continue doing whatever other work was available.

Brown was laid off from her permanent title of Technical Assistant 3 pursuant to an approved layoff plan in accordance with N.J.A.C. 4A:8-1.4. N.J.A.C. 4A:8-1.6(a) requires the appointing authority to provide general and individual notice of layoff to affected employees. N.J.A.C. 4A:8-1.6(f) requires the Commission to determine layoff rights, which include seniority, displacement rights, and special reemployment rights, and to then provide each permanent and probationary employee affected by the layoff action with a final written notice of their individual status, including a statement of appeal rights. There is no indication in the record, or allegation by Brown, that she appealed

her layoff rights to the Commission, or that she challenged NPS's layoff plan. Rather, as found by the arbitrator, Brown accepted an offer for provisional appointment as an Employment Benefits Specialist as a "New Hire."

On August 17, 2015, the first day of her new provisional position, Brown was expected to assist another employee with "onboarding" new employees. At 8:40 a.m. that morning, Brown again left her post and the worksite when her computer did not allow access to the People Soft program. Brown allegedly ranted and used inappropriate, but not foul, language in the process of leaving the worksite.[1] Brown was advised her conduct was egregious and would not be tolerated. Brown's subsequent request to use a sick day to cover the missed time on August 17, 2015 was denied, and she was docked for the portion of the shift she did not work.

By letter dated August 26, 2015, Brown was advised NPS "is exercising its right to terminate your services as a Provisional Employee Benefits Specialist effective Friday, August 21, 2015." Notably, NPS did not serve Brown with a preliminary or final notice of disciplinary action. A subsequent letter from the Director of Labor Relations to the Union confirmed that Brown "was not

---

[1]  Finding the testimony regarding Brown's statements to be hearsay, the arbitrator did not rely on this testimony.

terminated from her provisional position as an Employee Benefits Specialist for disciplinary reasons . . . ."  The Union filed a grievance on Brown's behalf contesting her removal.  The dispute proceeded to final and binding arbitration.

The parties submitted the following issues to the arbitrator:  "Does the arbitrator have jurisdiction in this matter?  If so did the [e]mployer, [NPS], have just cause for the termination of the grievant, Alicia Brown?  If not, what is the appropriate remedy?"

The arbitrator issued an award on November 1, 2016.  Noting the dispute fit within the contractual definition of a grievance and the parties had agreed to submit the grievance to arbitration, the arbitrator found the grievance arbitrable.[2]

In his discussion of the merits, the arbitrator found it undisputed Brown left her position without permission on July 31, 2015 and August 17, 2015.  He noted Brown was given a verbal warning after the first incident that her action was unacceptable and could not happen again, but received no discipline beyond the warning.  She was not informed that a further offense could result in further discipline or termination.

---

[2] NPS did not address the finding that the grievance was arbitrable in its merits brief.  Thus, the issue is deemed waived.  See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived on appeal."); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019).

As to the second incident, the arbitrator stated:

> The grievant left her position on August 17, 2015 without permission. It would seem axiomatic that an employee should know that he/she cannot simply leave their job at any time. In this situation Ms. Brown was aware that her work hours were 8:30 a.m. to 4:30 p.m. and that she was acting outside the norm as she left word with three individuals that she was leaving. On the Employer's side there is no record of discipline in this matter.

With regard to Brown's termination, the arbitrator stated:

> Ms. Brown was properly separated from her position as Employee Benefits Specialist as this was a provisional title and the Employer has the ability to remove an employee from a provisional position for any reason. However, Ms. Brown had rights to her permanent position of Technical Assistant 3. The Employer did not return her to this position. The question before me is whether the Employer had just cause to terminate her from the Technical Assistant 3 position.

The arbitrator noted Brown had received a verbal warning for the first incident and received counseling on how to deal with her emotions, but found "no reason for the grievant to expect that a repeat of this offense would result in termination" since she had not been "warned that this could happen." The arbitrator determined NPS did not have just cause to terminate Brown. However, he concluded that "leaving her job without permission on August 17, 2015 was a serious offense which she had previously been warned to avoid."

6

The arbitrator imposed a thirty-day suspension and ordered NPS to reinstate Brown to the position of Technical Assistant 3 thirty days after the effective date of her termination, and to make Brown "whole for all lost income or benefits back to the date of her reinstatement less any monies earned through unemployment insurance or other means."

NPS filed this action to vacate the award. The Union counterclaimed to confirm the award. Following dispositive cross-motions, the trial court issued an oral decision confirming the award as modified to reinstate Brown to the Employee Benefits Specialist position instead of the Technical Assistant 3 position, which no longer existed. The trial court dismissed the complaint with prejudice and directed NPS to implement the award as modified.

The trial court granted the Union's subsequent motion to enforce litigant's rights, ordering NPS to immediately comply with the award of back pay to Brown for the period of September 21, 2015 to December 19, 2016, subject to appropriate mitigating offsets. This appeal followed.

NPS argues: (1) the approved layoff plan reserved the right to terminate the permanent position of Technical Assistant 3; (2) Brown's actions provided just cause for termination; (3) as a provisional employee, Brown could be terminated from the title of Employee Benefits Specialist pursuant to Civil

Service regulations; and (4) the arbitrator and the trial court erred by reinstating Brown, a provisional at-will employee, who could be terminated by NPS at any time.

Our role "in reviewing arbitration awards is extremely limited." State v. Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 195, 169 N.J. 505, 513 (2001) (citing Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). We undertake "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011).

The New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides limited grounds for vacating an arbitration award, including:

> a. Where the award was procured by corruption, fraud or undue means;
>
> . . . . [or]
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

A court may also vacate an award if it is contrary to public policy. Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 202 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 11 (2007)).

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record," whereas an arbitrator exceeds his or her "authority by disregarding the terms of the parties' agreement." Borough of E. Rutherford, 213 N.J. at 203 (alteration in original) (quoting Off. of Emp. Rels. v. Commc'ns Workers of Am., 154 N.J. 98, 111-12 (1998)). Whether the arbitrator exceeded his authority "entails a two-part inquiry: (1) whether the agreement authorized the award, and (2) whether the arbitrator's action is consistent with applicable law." Id. at 212 (citing Commc'ns Workers of Am., Local 1087 v. Monmouth Cty. Bd. of Soc. Servs., 96 N.J. 442, 451-53 (1984)).

The party seeking to vacate an arbitration award bears the burden of demonstrating wrongdoing on the part of the arbitrator. Tretina Printing, Inc. v. Fitzpatrick & Assocs., 135 N.J. 349, 357 (1994); Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013). Because a decision to vacate or confirm an arbitration award is a decision of law, we review the denial of a motion to vacate an arbitration award de novo. Minkowitz, 433 N.J. Super. at 136 (quoting Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010)); see also Bound Brook Bd. of Educ. v. Ciripompa, 442 N.J. Super. 515, 520 (App. Div. 2015).

"Within the civil service system's competitive division of career service positions, 'regular appointments' are not permanent until completion of an examination, certification, and working test period." Melani v. Cty. of Passaic, 345 N.J. Super. 579, 586 (App. Div. 2001) (citing N.J.S.A. 11A:3-2; N.J.S.A. 11A:4-13(a)). "'Permanent employee' means an employee in the career service who has acquired the tenure and rights resulting from regular appointment and successful completion of the working test period." N.J.A.C. 4A:1-1.3. "A provisional appointee's position is held 'pending the appointment of a person from an eligible list.'" Melani, 345 N.J. Super. at 586 (quoting In re Chief Clerk, 282 N.J. Super. 530, 533 (App. Div. 1995) (quoting N.J.A.C. 4A:1-1.3)).

"A provisional appointee does not enjoy the job protection accorded to a permanent employee." Ibid. (quoting In re Chief Clerk, 282 N.J. Super. at 533). "Ordinarily, permanent employees can be discharged or demoted only for cause, and they have pre-termination appeal and hearing rights; however, provisional employees can be terminated at any time at the discretion of the employer." Ibid. (citing O'Malley v. Dep't of Energy, 109 N.J. 309, 314 (1987); N.J.A.C. 4A:2-2.1, -2.2, -2.5, and -2.8). Accordingly, a provisional employee has no right to appeal their termination to the Commission. O'Malley, 109 N.J. at 314.

10

When Brown was terminated, she had served in the provisional position for only five days. She had not taken the competitive examination for Employee Benefit Specialist, was not certified in that position, and was not named on an eligible list. She was not a long-term provisional employee who had performed satisfactorily yet failed to achieve permanent status because of NPS's neglect. Cf. Kyer v. City of East Orange, 315 N.J. Super. 524, 534 (App. Div. 1998) (excusing seven-year provisional employee's failure to achieve permanent status due to appointing authority's negligence). Accordingly, she could be terminated at the discretion of NPS.

The arbitrator ruled that although Brown could be terminated from her provisional position, she had rights to her permanent position of Technical Assistant 3. To reach this conclusion, the arbitrator relied on In re Erick Agins, Trenton, 2007 N.J. AGEN LEXIS 1053 (Merit System Bd. July 25, 2007), which stated: "It is axiomatic that, in accepting a provisional appointment to a higher title, the appellant did not relinquish the rights he had as a permanent employee." Ordinarily, an employee retains permanent title rights when the underlying permanent title survives a layoff action. Agins featured a laid off permanent employee whose title continued to exist beyond the layoff action. Accordingly,

the employee's permanent title rights were not extinguished when he accepted a provisional position.

The arbitrator's reliance on Agins is misplaced. NPS abolished all Technical Assistant 3 positions pursuant to the approved layoff plan. As a result, Brown no longer retained her permanent status rights in her former position when the layoff took effect on August 14, 2015. See Commc'n Workers of Am. v. Whitman, 335 N.J. Super. 283, 291 (App. Div. 2000) (stating "except for the 'bumping rights' which may exist under law or contract, no public employee has a right to job protection when a position is abolished").[3] Instead, Brown was a provisional appointee who could be terminated at the discretion of the appointing authority. O'Malley, 109 N.J. at 314; Melani, 345 N.J. Super. at 586.

The arbitrator concluded NPS had not demonstrated just cause for termination, reduced the discipline to a thirty-day suspension, reinstated Brown as a Technical Assistant 3, and awarded back pay. This was error. NPS was under no obligation to establish just cause or apply progressive discipline for

---

[3] The Commission has sole authority to determine hierarchal title rankings, demotional rights, and title rights. N.J.S.A. 11A:8-1. Brown did not appeal her layoff to the Commission or otherwise contest NPS's right to abolish the Technical Assistant 3 title. She does not contend that any lateral title rights pursuant to N.J.A.C. 4A:8-2.1(a), or demotional title rights pursuant to N.J.A.C. 4A:8-2.1(b), were violated. Therefore, performance of similar job duties does not bolster her claim for permanent status rights.

the removal of a provisional appointee whose permanent title rights were extinguished when the position was abolished. Whitman, 335 N.J. Super. at 291 (citations omitted).

Recognizing the arbitrator's award called for Brown's reinstatement to an abolished position, the trial court modified the award to reinstate Brown to the provisional Employee Benefits Specialist position. This too was error. Given Brown's loss of permanent status and apparent lack of displacement rights, she had no right to reinstatement as either a Technical Assistant 3 or a provisional Employee Benefits Specialist.

As a provisional appointee, NPS had the discretion to terminate Brown at any time without being required to apply progressive discipline or demonstrate just cause for her removal. Accordingly, the grievance should have been denied. Brown was not entitled to reinstatement to either position or an award of back pay. Consequently, the award was procured by undue means based on a mistake of law. The modification of the award was also error. The award is vacated and the order confirming the modified award is reversed.[4]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] In light of this ruling we do not reach the remaining issues raised by NPS.

A-4539-16T1