**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3466-17T3

IN THE MATTER OF ALAN
BRUNDAGE, JOHN LADUCA,
ROBERT CARNEY, III, MATTHEW
TIEDEMANN, RONALD SALZANO,
JOHN BAKER, GARY BENDIT,
CHRISTOPHER CHAN, JASON
GRETKOWSKI, MICHAEL MARCINIAK,
JUSTIN GARCIA, PETER BONGIOVANNI,
CHRISTOPHER SULLIVAN, PETER
FLANNERY, ROBERT HINTZEN, ANDREW
KARA, ALEX ECHEVARRIA, MATTHEW
BARTLETT, WILLIAM MCMONIGLE,
FRANK CANEJA, CHRISTOPHER TINIO,
MICHAEL DEVINE, JOHN PALETTO,
JEREMIAH NAYDA, DENISE R. RYABY,
THOMAS MILLER, BRUCE REED, DANIEL
ANTINORI, STANISLAV TOVBIN, GABRIEL
R. ESCOBAR, FRANK CARRAFIELLO, DARIO
A. VARGAS, VINCENT MAYO, VICTORIA
ALBERTO, JAMES E. SMITH, JOSEPH
PRIDE, ROBERT ESPINOSA, JAMES MULLIN,
DANIEL SANSAVERE, JACEK DEMCZUK,
SARA TORO, WENDY TINIO, GIDGET-ANN
PETRY, OSCAR LOPEZ, and BERGEN COUNTY
SHERIFF'S OFFICE.

_____

Submitted February 10, 2020 – Decided June 29, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-307.

Loccke Correia & Bukosky, attorneys for appellant Bergen County PBA Local 49 (Michael Albert Bukosky, of counsel and on the briefs; Corey Michael Sargeant, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Donna Sue Arons, Assistant Attorney General, of counsel; Pamela N. Ullman, Deputy Attorney General, on the brief).

PER CURIAM

This matter presents the latest appeal arising from the Bergen County Sheriff's Office's (BCSO) absorption of the former Bergen County Police Department (BCPD), and the BCSO's termination of former BCPD officers pursuant to a layoff plan approved by the Civil Service Commission's (CSC). In this appeal, the Police Benevolent Association, Local 49 (PBA), as a representative of appellants, the BCPD officers impacted by the layoff plan, appeals from the CSC's March 29, 2018 final agency decision finding that its Division of Appeals & Regulatory Affairs (Agency Services) correctly determined the layoff rights of the affected BCPD police officers. In reaching its decision, the CSC incorporated the reasoning from its June 7, 2017 decision

denying the PBA a stay of the Agency Services' approval of the BCSO's layoff plan.

On appeal, the PBA argues that the CSC "did not properly" determine the officers' "displacement rights"; failed to "follow the statutory requirement[s]" for layoffs being made "from an entire department not a target[ed] division"; failed to conduct an analysis comparing the duties of the sheriff's officers and the county police officers, which have been determined to be "interchangeable as a matter of law," or issue "a reasoned explanation based upon specific findings of fact." We disagree and affirm because the PBA failed to establish that the determination of appellants' layoff rights was arbitrary, capricious, or unreasonable.

The details of the realignment of the two law enforcement agencies is set forth in our earlier opinion dismissing as moot the PBA's appeal from the CSC's denial of the stay of the layoff plan's implementation. See In re Layoffs of Bergen Cty. Sheriff's Dep't v. Bergen Cty. Sheriff's Office, No. A-4103-16 (App. Div. Apr. 18, 2019) (slip op. at 3-4).[1] There, we explained that after the

---

[1] Our opinion addressed two consolidated matters: "In A-4103-16, the PBA appeal[ed] from . . . the [CSC's] denying a stay of the layoff plan. In A-4516-16, the PBA appeal[ed] from a June 6, 2017 order of the Chancery Division that dismissed an action filed by the PBA to enjoin the BCSO from implementing

realignment, the BCPD officers were to be part of a separate unit within the BCSO. Id., slip op. at 5. Although it was originally contemplated that BCPD officers were to be eliminated over time through attrition, circumstances changed in March 2017, when the BCSO reevaluated its needs due to new courthouse security plans promulgated by our Supreme Court. Id. slip op. at 5-7. The BCSO submitted to the CSC a new layoff plan that called for the reduction in the BCPD officers so that the new BCSO officers could be hired to meet the staffing requirements for the security plans. Id. slip op. at 6-7. In formulating the layoff plan, the BCSO considered alternatives, including lateral transfers of the BCPD officers, but found they were not "the best means of achieving . . . the goals of efficiency and economy in the operations of the [BCSO] in furtherance of the public interest." Id. slip op. at 7 (alterations in original).

The PBA filed objections to the plan with the CSC. Id. slip op. at 7-8. As we described in our last opinion,

> the PBA filed a petition with the CSC on April 17, 2017, requesting "relaxation to consider petitioner[']s

---

the layoff plan for failure to exhaust administrative remedies." Id., slip op. at 3. We dismissed the appeals as moot because while the earlier appeal was pending, the BCSO carried out the layoff plan and the only issue before us was a request for a stay of the plan's implementation that had already occurred. Id., slip op. at 16.

application to establish a different layoff unit . . . [and] to deny approval of the layoff plan submitted by . . . [BCSO] under the totality of the circumstances." Those circumstances included the BCSO's failure to comply with N.J.A.C. 4A:8-1.3 and the fact that the Sheriff's reasons for layoffs [were] pre-textual. According to the PBA's submission, there was no verification of the Sheriff's need for layoffs and, because the PBA challenged the Sheriff's reasons, a hearing in the Office of Administrative Law (OAL) was required.

[Ibid. (alterations in original).]

Despite the PBA's petition, on April 24, 2017, Agency Services approved the BCSO layoff plan without any "mention of the PBA's petition." Id. slip op. at 8. The PBA then sought a stay of the plan's implementation. Ibid. At that time, among other reasons, the PBA argued the layoff plan was not adopted in good faith, the contemplated layoff unit should have included the entire BCSO, and the plan violated the BCPD officers' statutory rights under N.J.S.A. 11A:8-1. It argued that the entire department should be considered as the layoff unit because the roles of the BCSO officers and the BCPD officers were identical, and with minimal training, the BCPD officers could qualify to serve as BCSO officers.

"[O]n June 7, 2017, the CSC issued a final decision denying the PBA's request for a stay." Id. slip op. at 10. In the CSC's decision it "addressed each

of the PBA's contentions and explained in detail why it concluded that the PBA failed to meet the criteria for a stay under N.J.A.C. 4A:2-1.2." Ibid.

In the decision, the CSC addressed the PBA's claims about the need to expand the layoff unit to the entire BCSO and its view that sheriff's officers and county police officers had nearly identical titles and duties. The CSC found that the roles of the BCPD officers and the BCSO officers differed from one another. It indicated that the differences and responsibilities were "consistent with classification studies and evaluations conducted by the [f]ederal government." The CSC explained that the BCPD officers and the BCSO officers fall into two different occupational categories, even though they were under the same class code.

Based on the United States Department of Labor's (USDOL) Standard Occupational Classification System, the BCPD officers fell under the category of "Police Officers and Detectives, Public Service," which included the following occupations: those "concerned with patrolling assigned beat on foot, on motorcycle, in patrol car, or on horseback to control traffic, preventing crime or disturbance of peace, arresting violators, noting suspicious persons and establishments, submitting reports to superior officer, dispersing unruly crowds at public gatherings, and issuing tickets to traffic violators." On the other hand,

the BCSO officers were considered under the category of "Sheriffs and Bailiffs," which included those "concerned with enforcing law and order in unincorporated districts, maintaining order in court and serving summonses."

Further, unlike the BCPD officers, under N.J.S.A. 40A:9-117.6, sheriff's officers "perform the duties involved in attending the courts . . . or in serving court processes, or in the investigation and apprehension of violators of the law, or in criminal identification, or in ballistics, or in any related work" determined appropriate for a sheriff's officer. The CSC also described the functions of the BCPD officers under N.J.S.A. 40A:14-107, which included enforcement of:

> (1) All rules and regulations made and promulgated by the governing body of the county governing the use of by the public, and the welfare of the public on, county highways and roads;
>
> (2) All provisions of chapter 171 (Sunday observances) of Title 2A of the New Jersey Statutes;
>
> (3) All provisions of Title 39 (Motor Vehicles and Traffic Regulation) of the Revised Statutes;
>
> (4) All provisions of Title 2C of the New Jersey Statutes; and
>
> (5) All rules and regulations made and promulgated by the governing body of the county respecting the general health, safety and welfare of the public within the territorial limits of the county.

7

The CSC also compared those duties and gave examples of work for both positions as indicated in certain worksheets. Based on the differences between county police officers' duties and those of sheriff's officers, the CSC determined the two positions were different under N.J.A.C. 4A:8-2.1(a).

Addressing the PBA's argument that the layoff unit should be expanded, the CSC concluded that there was not "any unique circumstances . . . in this matter to relax the rules for an expansion of the layoff unit." The CSC found that this case was distinguishable from In re Donohue, 329 N.J. Super. 488 (2000), a case relied upon by the PBA, because that case dealt with a plan that "impact[ed] a common title." In Donohue, the reorganization was different than the BCPD's "realignment" with the BCSO because "the [BCPD] Officers . . . were not separated from their autonomous agency at any time."

The CSC held that Agency Services properly approved the BCSO's layoff plan for "economy and efficiency" and that alternatives were not feasible. It further held that the PBA's argument that the BCPD officers should be reassigned to the BCSO roles was not ripe for consideration. Instead, that issue "pertain[ed] to the good faith of the layoffs." The only harm that would arise by waiting for the OAL to hear the matter, if a complaint was filed after the

layoffs occurred, was "financial with nature," which could be remedied in backpay.

We denied the PBA's ensuing application for an emergent stay.  In re Layoffs of Bergen Cty. Sheriff's Dep't, slip. op. at 9.  Thereafter the PBA filed an administrative appeal "on June 14, 2017 [and August 1, 2017], challenging the good faith of the proposed layoffs and raising issues about the wrongful effect of the plan on the lateral and demotional rights or seniority interests of the impacted employees."  Id. slip op. at 11.  The PBA argued that errors were made in determining demotional rights based on seniority determinations due to the retirement of two impacted BCPD officers and other issues relative to individual employees.  It also contended that the impacted BCPD officers were entitled to lateral rights of the BCSO officers' positions.

Agency Services denied the appeal on September 14, 2017, after finding "no errors in the seniority determinations."  It stated that all employees serving titles as BCPD officers "were subject to the layoff" based on the June 7, 2017 decision by the CSC.  Further, it held that lateral title rights as against the BCSO officers were not applicable to the BCPD officers also based on the CSC's June

7, 2017 decision. As to the PBA's good faith claims, Agency Services referred the matter to the OAL.[2]

On September 28, 2017, the PBA requested that the CSC reconsider Agency Services' September 14, 2017 decision. The request for reconsideration did not raise any argument about the identification or expansion of the layoff unit or the comparison of titles between BCSO and BCPD officers. Instead, it focused upon seniority displacement rights that it argued were not properly considered as a result of one of the BCPD officer's retirement. Additionally, the PBA contended that there were timeframe issues in making the determination that Agency Services did not properly consider. As argued by the PBA, the effective date of the layoff plan determined the impact of the officer's retirement on other officers' demotional rights.

On March 29, 2018, the CSC denied the request. In its written decision, it explained that its June 7, 2017 determination explained "the rationale for the layoffs." It addressed the issue raised about the BCPD officer's retirement and determined the "layoff rights were properly determined." It found that the layoff rights were not available against the BCSO officers and the affected officers' demotional rights were determined in accordance with N.J.A.C. 4A:8-2.2(a),

---

[2] According to the CSC, the hearing has yet to occur.

N.J.A.C. 4A:8-2.2(c), and N.J.A.C. 4A:8-2.4(b). It confirmed that while the BCPD sergeants, lieutenants, and captains had displacement rights against the other BCPD officers, the BCPD police officers did not have displacement rights. This appeal followed.

Our "review of an administrative agency decision is limited." In re Tukes, 449 N.J. Super. 143, 156 (App. Div. 2017) (citing In re Herrmann, 192 N.J. 19, 27 (2007)); see also Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "A 'strong presumption of reasonableness attaches' to the [CSC]'s decision." In re Tukes, 449 N.J. Super. at 156 (quoting In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001)). In our review, we are "mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field,'" Allstars Auto Grp., Inc., 234 N.J. at 158 (quoting Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009)), and we will not interfere with a final agency decision unless it is "arbitrary, capricious, or unreasonable, or . . . lacks fair support in the record." In re Herrmann, 192 N.J. at 27-28.

In our review, we consider only:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011))].

We "give 'great deference' to an agency's 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 302 (2015) (quoting N.J. Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 549 (2012)). We will not interfere unless an agency's determination is "patently incompatible with the language and spirit of the law." In re Hudson Cty. Prob. Dep't., 178 N.J. Super. 362, 371 (App. Div. 1981) (quoting Walsh v. Dep't of Civil Serv., 32 N.J. Super. 39, 44 (App. Div. 1954), certif. granted, 17 N.J. 182 (1955)). However, although we afford great deference to the agency's interpretation, we are not bound by an agency's interpretation of a statute or a legal issue. Mondsini v. Local Fin. Bd., 458 N.J. Super. 290, 297 (App. Div. 2019).

We turn first to the PBA's argument that the CSC, in its March 2018 decision, did not address substantive claims made by the PBA or properly

12

conduct a merits adjudication concerning the officers' displacement rights as "it failed to review . . . evidence [provided by the officers] and give it at least some consideration." According to the PBA, the CSC failed to "render a reasoned explanation based upon specific findings of fact," explaining "how it actually 'weighed the merits' of [the PBA's] claims" because it failed to address title comparability in its final decision. We disagree.

We conclude that the CSC's final decision that incorporated its earlier findings and conclusions of law satisfied its obligation to provide an adequate statement of reasons for its decision. See In re Orban/Square Props., LLC, 461 N.J. Super. 57, 77-78 (App. Div. 2019) ("[F]indings of fact [must] be sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." (Alterations in original) (quoting In re Arbitration between N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 377 (1950))). We find no merit to the PBA's contention that the CSC's March 2018 decision failed to address substantive claims, especially in light of the issues raised by the PBA in its request for reconsideration.

The decision was issued in response to the PBA's September 28, 2017 letter asking for reconsideration and recalculation of the seniority rights of BCPD employees because of certain retirements that previously took place. The PBA's letter did not address the lateral and demotional rights of the BCPD officers or the expansion of the layoff unit, as the PBA now raises in this appeal. For that reason, there was no need for the CSC to address that issue beyond what was discussed in its June 7, 2017 decision. Nevertheless, we address the PBA's contentions about the layoff unit and the BCPD officers' layoff and demotional rights because we earlier believed that those contentions would have been addressed in our prior opinion regarding the CSC's denial of a stay of the layoff plan's implementation.[3]

We begin with the PBA's challenge to the layoff unit. According to the PBA, by not expanding the layoff unit, the CSC "circumscribe[d] the lateral

---

[3] On May 30, 2018 we entered an order barring this issue from being addressed in this appeal because it appeared to be the subject of the appeal then pending under A-4103-16. However, as already noted, we dismissed that appeal for unrelated reasons and noted in that opinion that this issue was the subject of this appeal. At the time of our earlier opinion, we were not aware of the May 30, 2018 order issued by another panel of this court. Under these circumstances we choose to address the issue now.

layoff interests of the affected employees," "in violation of State statutes and the regulatory code." We disagree.

In implementing layoffs, there must be a layoff unit, which is "a department in a county . . . except that the commission may establish broader layoff units.[4]" N.J.S.A. 11A:8-1(c).

---

[4] If parties are in compliance with the time-restraints under N.J.A.C 4A:8-1.4, an expanded layoff unit can be requested if the following procedures are followed:

> 1. A request may be submitted by an appointing authority to the Chairperson or the matter may be initiated by the Chairperson.
>
> 2. Notice of the request shall be provided by the appointing authority to affected negotiations representatives upon submission to the Chairperson.
>
> 3. After receipt of the request, the Chairperson shall specify a period of time, which in no event shall be less than [twenty] days, during which affected employees and negotiations representatives may submit written comment and recommendations.
>
> 4. Thereafter, the Chairperson shall issue a determination approving, modifying, or rejecting the proposed layoff unit, after considering:
>
> > i.     The need for a unit larger than a department;
> >
> > ii.    The functional and organizational structure of the local jurisdiction;

The PBA's argument that there was a basis to expand the layoff unit is unsupported by the facts. We conclude that although not addressed by the CSC in its March 2018 decision, the creation of the Bureau of Police Services staffed by the former BCPD officers, as part of the unusual realignment of the former county police department with the BCSO, qualified as a layoff unit under N.J.S.A. 11A:8-1(c). However, and as the CSC determined, that fact only has meaning here to the extent that the BCPD officers had any lateral rights against BCSO employees. "[L]ateral title right[s] exist[] only if the [CSC] determines that there are titles comparable to the affected title within the layoff unit." In re Tukes, 449 N.J. Super. at 148.

Here, in its June 7, 2017 decision, the CSC conducted an exhaustive comparison of the roles and duties of county police officers and county sheriffs'

---

    iii.    The number of employees, funding source and job titles in the proposed unit;

    iv.    The effect upon employee layoff rights; and

    v.    The impact upon service to departmental clientele and the public.

[N.J.A.C. 4A:8-1.5(c).]

officers and determined that the BCPD officers did not have any lateral rights to the BCSO because their functions were too dissimilar. To the extent that comparison was correct, whether the layoff unit should have been expanded is immaterial.

We turn therefore to the CSC's analysis of the two job functions. According to the PBA, applying the criteria under N.J.S.A. 11A:8-1 and N.J.A.C. 4A:8-2.1, the CSC failed to properly compare sheriff's officers' and county police officers' titles and duties, which it contends "are more likely identical than similar," before reaching its final determination. It also contends that under N.J.S.A. 40A:14-180, the BCSO officers and the BCPD officers "are compatible as a matter of law." Further, it argues that because special class II officers under N.J.S.A. 40A:9-117(b) "have been determined as fully equipped to perform [c]ourt [r]oom [s]ecurity," so too can a BCPD officer, who holds "more plenary police powers."

At the outset, we acknowledge that "[t]he exercise of lateral or demotional title rights may have a serious impact on other government workers, who may be displaced, as well as on the appointing authority, whose work force may be rearranged." In re Donohue, 329 N.J. Super. at 494-95, 497 (addressing the finality for appeal purposes of a determination denying expansion of a layoff

unit and reclassification of a title). To properly determine layoff rights, "requires the application of uniform regulatory criteria based upon a careful analysis of job qualifications and duties articulated in the job specifications of the targeted employee, as compared to the job specifications of those titles within the layoff unit to which the targeted individual might have rights." Id. at 497.

When a civil service employee's position is targeted for layoff, he or she is provided applicable lateral and demotional title rights. N.J.S.A. 11A:8-1(f). Where an employee believes his or her layoff rights "were determined and/or applied incorrectly," he or she has a right to appeal to the CSC, which then reviews, de novo, "the written record" in making its determination. N.J.A.C. 4A:8-2.6(a)(2); see also Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980) (approving the CSC's de novo review of appeals). In the appeal, "[t]he burden of proof is on the appellant." N.J.A.C. 4A:8-2.6(c).

In re Tukes, we set forth the definition of an employee's layoff rights and the considerations the CSC must look to when determining whether lateral rights exist. There we stated the following:

> A "demotional title right" is the right of an employee whose title is the target of a layoff to displace "an employee in the layoff unit holding a title determined [by the Commission] to be lower than, but related to the

affected title of the employee." N.J.A.C. 4A:8-2.1(b). Permanent employees also have displacement rights to "any title previously held on a permanent basis within current continuous service." N.J.A.C. 4A:8-2.2(f). For these rights, "[d]isplacement may be made only on the basis of greater permanent continuous service . . . ." Ibid. These further rights "shall not be granted when the employee has either lateral title rights options, or demotional title rights options to a title with a higher class code than the previously held title, within the selected job locations." N.J.A.C. 4A:8-2.2(f)(1).

. . . . A "lateral title right" is defined as "the right of a permanent employee to exercise displacement rights . . . against an employee in the layoff unit holding a title determined to be the same or comparable to the affected title of the employee." N.J.A.C. 4A:8-2.1(a).

In order for two positions to have lateral title rights to each other, the titles, duties, and education and experience requirements for the two positions do not have to be identical. N.J.S.A. 11A:8-1(e). Instead, the titles need only have "substantially similar duties and responsibilities"; "similar" education and training requirements; and "similar" special skills, licenses certification or registration requirements. Ibid.

In addition, titles may be deemed "lateral" to each other even when an employee who is "bumping" from one lateral title to another has never performed the actual duties of the title to which he or she is moving. Ibid. Thus, one title can be deemed lateral to another when the "employees in [the] affected title, with minimal training and orientation, could perform the duties of the designated title by virtue of having qualified for the affected title[.]" Ibid. (emphasis added).

19

A lateral title right exists only if the Commission determines that there are titles comparable to the affected title within the layoff unit. The determination of "title comparability" is made by the Commission based upon four factors:

> 1. The title(s) shall have substantially similar duties and responsibilities and the same class code;
>
> 2. The education and experience requirements for the title(s) are the same or similar and the mandatory requirements shall not exceed those of the affected title;
>
> 3. There shall be no special skills, license, certification or registration requirements which are not also mandatory for the affected title; and
>
> 4. Any employee in the affected title with minimal training and orientation could perform the duties of the designated title by virtue of having qualified for the affected title.
>
> [N.J.A.C. 4A:8-2.1(a).]

[In re Tukes, 449 N.J. Super. at 147-49 (first, second, third, fifth, sixth, and seventh alterations in original) (emphasis added).]

In re Tukes, we affirmed the CSC's decision that two different positions were similar in nature as both positions were involved in "para-medical activities." Id. at 150. In making this decision, the CSC indicated that the two

roles had the exact same class code and occupational group number. Id. at 149. Only after the CSC determined that the positions were similar enough, through analyzing the job descriptions and examples of work, did the CSC then move on to the rest of the factors under N.J.A.C. 4A:8-2.1(a). Id. at 149-52. That analysis included reliance upon the Standard Occupational Classification System used by the CSC in this case. Id. at 149. We determined that the educational and experience requirements were identical, there were no special licenses needed besides having a driver's license, and through minimal training one could be employed in either position. Id. at 151-52.

Here, the CSC correctly determined that the roles of the BCPD police officers and the BCSO officers differed from each other. The CSC went through the classifications of both positions and determined that the two titles had different occupational groups and were not similar enough under N.J.A.C. 4A:8-2.1(a)(1). Its conclusion was well supported by the record. The CSC conducted a comprehensive comparison between the BCPD officers and the BCSO officers, including differences between the duties and roles of the two positions. We have no cause to disagree with that analysis. We only add the following remarks.

While the PBA is correct in claiming that BCPD officers and BCSO officers have many similar duties and responsibilities, it fails to recognize foundational differences between the two titles. A BCSO officer gets his or her authority through the New Jersey Constitution. See N.J. Const., art. VII, § 2. Additionally, the BCPD and the BCSO have historically been separate entities. Specifically, the BCPD was a division of the county's Department of Public Safety, led by a director appointed by the county executive. The county sheriff was the head of a separate department with officers under his or her jurisdiction.

Most significant to the CSC's determination were the differences in the duties and roles of offices in the two departments. Sheriff's officers are traditionally responsible for overseeing county correctional facilities and securing county courthouses. See State v. Tedesco, 214 N.J. 177, 197 (2013); State v. Zhu, 165 N.J. 544, 557 (2000); Essex Cty. Corr. Officers PBA Local No. 382 v. County of Essex, 439 N.J. Super. 107, 118 n.2 (App. Div. 2014); County of Gloucester v. Pub. Emp't Relations Comm'n, 107 N.J. Super. 150, 157-58 (App. Div. 1969), aff'd, 55 N.J. 33 (1970). They are assigned to both the criminal and civil courts, as well as to non-courtroom areas of the courthouse, such as central judicial processing, the security post at the entrance to the courthouse, and the elevator. A sheriff's officer is responsible for the

protection of jurors and facilitating their deliberations. See, e.g., State v. Dorsainvil, 435 N.J. Super. 449, 479, 483-84 (App. Div. 2014); State v. Tindell, 417 N.J. Super. 530, 558-61 (App. Div. 2011). They are responsible for transporting and delivering both county and state prisoners each day and monitoring them while within the justice facilities, including while in holding cells waiting to be brought into court. They must supervise and facilitate an attorney's ability to speak to his or her client, which involves securing their own weapons, securing the prisoner, and guarding both during the interview. See State v. Russell, 384 N.J. Super. 586, 594 n.3 (App. Div. 2006) (explaining that sheriff's officers are experts in security for criminal courts), overruled in part on other grounds by State v. Kuchera, 198 N.J. 482 (2009).

While the BCPD officers were responsible for patrolling and protecting, the PBA fails to recognize the added training needed to secure prisoners, protect judges, jurors, and the public, and to be at times in the presence of prisoners who have been accused or have already committed serious crimes. To effectively deal with these safety and risk factors, the New Jersey Supreme Court mandated that each courtroom with a judge or a hearing officer be equipped with an armed sheriff's officer, not an officer of the BCPD or other police departments.

Once the CSC correctly determined that the two positions were different, and, for that reason, the affected BCPD officers had no lateral rights against the BCSO employees, there was no reason for it to continue the analysis and consider N.J.A.C. 4A:8-2.1(a)(2) to (4). We have no cause to disturb its decision.

Finally, we conclude that the PBA's remaining arguments, including the one relating to Special Class II officers, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3466-17T3